## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THOMAS E. JOHNSON,** | : | **Civil No. 1:20-cv-0639** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | **(Judge Wilson)** |
| **v.** | : | |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **M. GARMAN[1] *and* MS. S. CLARK,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

On February 28, 2022, a number of cases, including the instant case, were reassigned to the undersigned for pretrial management. This is a prisoner civil rights case filed by the *pro se* plaintiff, Thomas E. Johnson, an inmate currently incarcerated at the Rockview State Correctional Institution ("SCI Rockview"), in Bellefonte, Pennsylvania. Johnson, who suffers from schizophrenia, initiated this action on April 10, 2020, alleging that the defendants, M. Garman, Superintendent of SCI Rockview, and S. Clark, Unit Manager of SCI Rockview, violated his Eighth Amendment rights and Title II of the Americans with Disabilities Act (ADA) when

---

[1] The defendants' supporting exhibits indicate the correct spelling of the defendant's name as "Garman" despite it being spelled differently in the defendants' brief.

they failed to provide him a single cell, or Z Code, due to his mental illness. (Doc. 1). Johnson seeks compensatory damages of $75,000 and injunctive relief granting him Z Code single cell status.[2]

Pending before the court is a motion for summary judgment by the defendants (Doc. 30). The defendants submit that the plaintiff has not exhausted his administrative remedies and thus his claims are barred. They also allege that Johnson's Eighth Amendment and ADA claims fail as a matter of law and that the defendants are shielded by qualified immunity. For the reasons set forth below, we recommend the defendants' motion for summary judgment be granted.

## II. <u>Factual Background</u>[3]

[2] According to Johnson, he was assigned Z-Code and given his own cell four months prior to his March 5, 2021 deposition. (Doc 32-1, at 10). Thus, to the extent Johnson is still seeking injunctive relief assigning him to Z-Code this request should be considered moot.

[3] These facts are taken from the defendants' statement of material facts and supporting exhibits. In support of their motion for summary judgment, the defendants complied with Local Rule 56.1 by filing a statement of facts that they asserted were undisputed, supported by citation to evidence of record. (Doc. 31). Local Rule 56.1 also requires that "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried." LR 56.1. Failure to comply with this rule has real consequences for litigants, since "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." <u>Doe v. Winter</u>, No. 04–CV–2170, 2007 U.S. Dist. LEXIS 25517, *2 n. 2, 2007 WL 1074206 (M.D.Pa. Apr. 5, 2007) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986)). Johnson did not file a

The plaintiff, Thomas Johnson, is an inmate at SCI Rockview who suffers from paranoid schizophrenia.  (Doc. 31, ¶ 1; Doc. 32-1, at 5). On December 24, 2018, Johnson alleges that his former cellmate attacked him while he slept, punching him in the face and choking him. (Doc. 31, ¶¶ 3-4; Doc. 32-1, at 6-7). He reported the attack to staff before breakfast the following day and was taken to the medical unit where he was told he would be ok. (Doc. 31, ¶¶ 5, 7; Doc. 32-1, at 8-9).  Plaintiff alleges his jaw hurt but he apparently sustained no other physical injuries from the attack. (Doc. 31, ¶ 5; Doc. 32-1, at 8). The following day, Johnson's cellmate was removed from his cell. (Doc. 31, ¶ 8; Doc. 32-1, at 9).  Following the attack, the plaintiff began seeking a Z Code status that would entitle him to his own cell because his mental illness causes him to fear sharing a cell with another inmate. (Doc. 31, ¶ 2; Doc. 32-1, at 10-11). In pursuit of being assigned Z Code, Johnson wrote letters to staff about the attack, (Doc. 31, ¶ 11; Docs. 32-9, 32-10), and filed multiple grievances, two of which were appealed through the entire administrative process. (Doc. 31, ¶¶ 9, 10; Doc. 32-2, ¶ 15). Johnson's grievances following the incident were denied, (Doc. 31, ¶ 12; Doc. 32-5), and he was not assigned his own cell until around December of 2020. (Doc. 31, ¶ 13; Doc. 32-1, at 10).

---

counterstatement of facts in accordance with M.D. Pa. Local Rule 56.1.  Thus, the following facts are undisputed, or where disputed, reflect Johnson's version of the facts pursuant to this court's duty to view all facts and reasonable inferences in the light most favorable to the nonmoving party.

The plaintiff filed his complaint on April 17, 2020. (Doc. 1). On September 14, 2020, the defendants filed an answer, (Doc. 19), and on April 14, 2021, the defendants filed a motion for summary judgment in this case. (Doc. 30). In their brief in support of the motion, the defendants argue they are entitled to judgment as a matter of law because Johnson failed to exhaust his available administrative remedies prior to initiating this action and because he has failed to assert a cognizable Eighth Amendment or ADA claim against them. (Doc. 33). The defendants also argue they are entitled to qualified immunity for their actions. (Id.) The motion for summary judgment is fully briefed and ripe for disposition. (Docs. 33, 34). For the reasons that follow, we recommend the defendants' motion for summary judgment be granted.

## III.   <u>Discussion</u>

### A.  <u>Motion for Summary Judgment – Standard of Review</u>

The defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." <u>Univac Dental Co.</u>

4

v. Dentsply Int'l, Inc., 702 F.Supp.2d 465, 468 (M.D. Pa. 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id., at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla

of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id., at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark New Jersey v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982); see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon

bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, it is emphatically not the province of the court to weigh evidence or assess credibility when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. Id. Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Anderson, 477 U.S. at 252; see also Big Apple BMW, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011).

## B. Johnson's Claims Against Defendants Garman and Clark Are Unexhausted and Barred by the Federal Prison Litigation Reform Act

In their motion for summary judgment, the defendants argue they are entitled to judgment on all claims against them because they contend that the plaintiff failed to fully and properly exhaust the administrative remedies available to him under Department of Corrections procedures. The Department of Corrections maintains a general grievance system, DC-ADM 804 that offers a three-phase grievance and appeals procedure. Pursuant to DC-ADM 804, inmates first file grievances with the Facility Grievance Coordinator at the facility where the events upon which the complaint is based occurred. If the inmate is unsatisfied with the initial review of his grievance, he may appeal the decision to the Facility Manager (Superintendent). Upon receiving a decision from the Superintendent, the inmate may file an appeal with the Secretary's Office of Inmate Grievances and Appeals (SOIGA) within 15 days of the Superintendent's decision.

In this case, Johnson's alleged failure to pursue these administrative remedies may have substantive significance for the plaintiff since the Prison Litigation

Reform Act provides that "[n]o action shall be brought with respect to prison conditions under . . . any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42  U.S.C.  §  1997e(a). Section  1997e's exhaustion requirement applies to a wide-range of inmate complaints, including damages complaints like those made here grounded in alleged violations of the Eighth Amendment. See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); Booth v. Churner, 206  F.3d  289  (3d  Cir.  2000).  While  this exhaustion requirement  is  not  a jurisdictional bar to litigation, it is strictly enforced by the courts. This rigorous enforcement  is  mandated  by  a  fundamental  recognition  that §  1997e's exhaustion requirement promotes important public policies. As the United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a).... [A] a comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning

> personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards. And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency. . . . Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto. . . . In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000) (citations omitted). Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court.

Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that

inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See, e.g., Bolla v. Strickland, 304 Fed.Appx. 22 (3d Cir. 2008); Jetter v. Beard, 183 Fed.Appx. 178 (3d Cir. 2006); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000).

Furthermore, applying this procedural default component to the exhaustion requirement, the Third Circuit has held that:

> As for the failure to the identify named defendants on the grievance form, . . . to the extent the identity of a defendant was "a fact relevant to the claim," Pennsylvania's prison grievance policy mandated that the identification be included in the inmate's statement of facts on the grievance form.

> And, . . . in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constituted a failure to properly exhaust his administrative remedies under the PLRA.

Williams v. Pennsylvania Dep't. of Corrections, 146 Fed.Appx. 554, 557 (3d Cir. 2005). Thus, "it is clear, regardless of the purpose of the requirement, that Spruill requires the prisoner-grievant-plaintiff to name in the grievance those he eventually sues, upon pain of procedural default." Hemingway v. Ellers, No. 07-1764, 2008 WL 3540526, *11 (M.D. Pa. Aug. 12, 2008).

This broad rule favoring full exhaustion admits of one, narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000).

However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49 Fed.Appx. 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," Harris v. Armstrong, 149 Fed.Appx. 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Davis, 49 Fed.Appx. at 368. See also Brown v. Croak, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000) (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and uncontradicted correctional officers impeded filing of grievance).

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. Harris v. Armstrong, 149 Fed.Appx. 58, 59 (3d

Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to him. Davis, 49 Fed.Appx. at 368. Furthermore, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. Casey v. Smith, 71 Fed.Appx. 916 (3d Cir. 2003). Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed. Oliver v. Moore, 145 Fed.Appx. 731 (3d Cir. 2005) (failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

Here, Johnson explained that he is aware of the DOC's inmate grievance system. Although he has submitted multiple grievances, only two were appealed through the entire process up to SOIGA: Grievances 778382 and 806529. (Doc. 32-2, ¶ 15; see also Doc. 32-4, at 2). Johnson filed grievance 778382 on December 24, 2018, the same day he was attacked by his former cellmate. (Doc. 32-5, at 3). Johnson specifically stated the grievance was "not against you Ms. Clark, Unit Manager," but requested a "Z Code status for [his] safety" following the attack due to his long sentence and mental illness. (Id.) The grievance was denied as frivolous on January 15, 2019 "as the process [was] initiated to review [Johnson] for a Z Code." (Id., at 4). Johnson filed an appeal on March 3, 2019, after learning from Unit

Manager Clark on February 26, 2019 that his request for a Z Code had been denied.
(Id., at 5). The Facility Manager denied the grievance appeal as untimely as it was
not filed within 15 working days from the date of the initial review response. (Id., at
6). Johnson filed an appeal to SOIGA arguing his appeal to the Facility Manager
was timely because staff had misled him to believe he could not appeal the denial of
his Z Code request until staff reached a decision on his Z Code request. (Id., at 7).
SOIGA dismissed the appeal based on the timeliness issue. (Id.)

Johnson's other grievance that was appealed to SOIGA related to a March 16,
2019 Inmate Disability Accommodation Request Form seeking a Z Code housing
designation to "ensure [his] safety from physical assault" and to address his
increased fears of assault from past physical attacks and his mental disability. (Doc.
32-6, at 8). On June 13, 2019, Johnson filed grievance 806529 against Corrections
Health Care Administrator Richard Ellers, a non-defendant, for failing to respond to
the March 16, 2019 accommodation request. (Id., at 3). The grievance was denied
on June 20, 2019 noting that "Johnson has incorrectly used the Inmate Disability
Accommodation Request, DC-ADM 006 . . . to request consideration for a Z-Code[,]
[t]he correct process is outlined in DOC Policy 11.2.1. . . ." (Id., at 4)  Johnson filed
a timely appeal to Defendant Garman, again challenging the denial of a Z Code.  (Id.,
at 5). Garman denied the appeal, reiterating that the Disability Accommodation
Request was not the appropriate form for requesting housing status and informing

14

Johnson that he should discuss his concerns with his unit team. (Id., at 6). Finally, Johnson appealed his grievance to SOIGA, accusing Superintendent Garman and Deputy Houser of denying him a Z Code in violation of his Eighth Amendment rights. (Id., at 7). SOIGA denied the appeal, again noting Johnson had used the incorrect process to request Z Code status and that his previous request for a Z Code was denied. (Id., at 2).

In the interim, on March 10, 2019, Johnson filed grievance 790968, complaining that Defendant Clark denied his request for a Z Code or single cell in violation of the ADA and alleging cruel and unusual punishment. (Doc. 32-10, at 4). This grievance was denied as frivolous on March 21, 2019, noting that his Z Code "vote sheet" was still circulating and that Johnson would be notified when a final decision had been made. (Id., at 6). Johnson again appealed, and on April 16, 2019, Defendant Garman denied Johnson's appeal of the denial of Grievance 790968 stating that Garman "[is] the final decision maker" with respect to his Z Code request and that, based on the input from his unit team, "[a] determination has been made [that he is] appropriate for double celling." (Id., at 7).  Although an inmate appeal to final review for Grievance # 790968 is included in the record, (Doc. 32-10, at 8), it appears Johnson sent his final appeal directly to Secretary Wetzel instead of SOIGA. (Doc. 32-10, at 2). A staff assistant advised Johnson that he must follow the

grievance procedures an address his final grievance appeal to SOIGA, (Id.), but there is no record of Johnson ever filing such a final appeal. (See Doc. 32-4, at 2).

Thus, it appears that Johnson presents a patchwork of grievances, none of which meet the exhaustion requirements necessary for him to bring his claims in federal court. As to Grievance # 778382, it appears this grievance is unexhausted as to the plaintiff's claims, the defendants named, and due to failure to adhere to the appropriate appeals procedure. Although it implicates Defendant Clark, the original grievance explicitly stated the grievance was not against her. Further, Johnson utilized the grievance to request a Z Code, not to challenge the denial of a Z Code request or the revocation of a preexisting Z Code status. Prison officials informed Johnson that the grievance was not an appropriate avenue to request a Z Code status, and that his request for Z Code was pending. Only after Johnson learned he had been denied Z Code did he include this as a claim in his appeal.

Further, although his grievance made it to SOIGA, it only did so to be dismissed as untimely – Johnson's original grievance was denied on January 15, 2019, and he appealed on March 3, 2019, long after the 15-day period allotted for appeals. Thus, clearly Johnson did not fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill, 372 F.3d 218. His failure to comply with the timeliness requirements of his appeal cannot be excused, as he argues, due to Johnson believing he had to wait until a decision

was made about his Z Code status before appealing his grievance. There is no evidence that Johnson was "misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Davis, 49 Fed.Appx. at 368. Prison officials informed Johnson that a grievance was not the appropriate procedure to request Z Code. If Johnson was dissatisfied with the Z Code determination, the appropriate remedy would have been to file another grievance challenging the determination, not change his claim on appeal. Further, no prison official told Johnson he needed to wait to appeal his original grievance until after a decision had been made about his Z Code status. Thus, it appears Johnson's failure to comply with the administrative requirements of the grievance process were not due to him being misled by staff or any extraordinary reason but merely by his misunderstanding of the grievance process and its requirements. And, as previously noted, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. Casey, 71 Fed.Appx. 916.

As to the only other grievance Johnson pursued to SOIGA, neither Garman nor Clark are mentioned in it and the denial of his Z Code request is not subject of the grievance. *See* Doc. 32-6, p. 3. Grievance 806529 addresses Mr. Eller's alleged failure to respond to Johnson's Inmate Disability Accommodation request for a Z Code. (Id.) Thus, the grievance even though exhausted, is not relevant to Johnson's claims against the Defendants.

Finally, although Johnson filed grievance 790968 concerning Unit Manager Clark's February 26, 2019 decision not to support his Z Code request, Johnson did not complete the third step of the grievance process by filing an appeal to SOIGA. Rather, he attached his final appeal to correspondence he sent directly to Secretary Wetzel. He was advised he needed to follow the grievance policy and file his final appeal to SOIGA. There is no evidence in the record he did so. Moreover, as noted in Superintendent Garman's response to Johnson's grievance appeal, the final decision as to his Z Code request was not made until March 2019, a little less than a month *after* Johnson submitted grievance 790968. (Doc. 32-9, p. 15.)

Accordingly, based on the uncontested record, we find the defendants are entitled to summary judgment as to Johnson's Eighth Amendment and ADA claims because the plaintiff failed to properly exhaust his available administrative remedies as to each claim prior to initiating this action.

### C. **Johnson's Eighth Amendment Claims Fail As a Matter of Law**

Even if Johnson had properly exhausted his administrative remedies, his claims under the Eighth Amendment also fail as a matter of law. Johnson alleges that Defendants Clark and Garman violated his Eighth Amendment rights by denying him a single cell assignment. On this score, "[w]hen an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, we must determine if prison officials acted with

'deliberate indifference' to the inmate's health." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  In this setting, it is also clear that, "[t]he Eighth Amendment prohibits punishments inconsistent with "evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958)).

Conditions of prison confinement violate the Eighth Amendment only if they "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). See Atkinson v. Taylor, 316 F.3d 257, 272 (3d Cir. 2003). These necessities include "adequate food, clothing, shelter, and medical care." Farmer, 511 U.S. at 832. However, it is also clear that the Constitution "does not mandate comfortable prisons," Wilson v. Seiter, 501 U.S. 294, 298 (1991), and "routine discomfort is part of the penalty that criminal offenders pay for their offenses against society." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (internal quotation marks and citation omitted). Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." Id.

The United States Court of Appeals for the Third Circuit has interpreted the "deprivation of basic human needs" standard as requiring proof of two elements: (1) "a sufficiently serious objective deprivation," and (2) "that a prison official subjectively acted with a sufficiently culpable state of mind, i.e., deliberate

indifference." <u>Tillman v. Lebanon Cnty Corr. Facility</u>, 221 F.3d 410, 418 (3d Cir. 2000). As to the first element, a sufficiently serious objective deprivation requires the prisoner to show substantial risk of serious harm. <u>Farmer</u>, 511 U.S. at 834 (citing <u>Helling v. McKinney</u>, 509 U.S. 25, 35 (1993)). Further, to show a prison official subjectively acted with deliberate indifference requires that the official acted with actual awareness of excessive risk to the plaintiff's safety, <u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 133 (3d Cir. 2001), and requires more than mere negligence. <u>Farmer</u>, 511 U.S. at 835.

Here, our sister courts have held that, "the denial of Z-code status, by itself, is not cruel and unusual punishment and does not rise to the level of an Eighth Amendment violation." <u>Matthis v. Dep't of Corr.</u>, No. 16-0306, 2017 WL 6406884, at *12 (W.D. Pa. Dec. 15, 2017) (citing <u>Gellock v. Prison Health Servs., Inc.</u>, No. 07-08, 2009 WL 2038235, at *8 (W.D. Pa. July 8, 2009)); <u>see also</u> <u>Thomaston v. Meyer</u>, 519 F. App'x 118 (3d Cir. 2013) (holding denial of Z Code request is not a deprivation of a protected liberty interest). Moreover, it is well established that "[a]n inmate does not have a right to be housed in a particular facility or in a particular area within a facility." 37 Pa. Code § 93.11; <u>see also</u> <u>Moody v. Daggett</u>, 429 U.S. 78, 88 (1976); <u>Montanye v. Haynes</u>, 427 U.S. 236, 242 (1976). Thus, we cannot find that Johnson's allegations that the defendants denied him Z Code are a sufficiently serious deprivation showing a substantial risk of harm and entitling him relief.

20

Further, Johnson has not demonstrated that the defendants were deliberately indifferent to his health or safety.  The record demonstrates that Johnson's unit team, which was comprised of various individuals, including a psychologist, followed the prescribed protocol and determined that Johnson did "not meet the criteria for Z Code Status." (Doc. 32-9, at 14). In an unsworn declaration by Major of Unit Management at SCI Rockview Heather Haldeman, she indicated that there were no reports of a fight or assault upon Johnson following his alleged attack in December 2018 and that Johnson had no bruising or injuries from the attack. (Doc. 32-7). Nonetheless, unit staff still engaged in the process of determining if Johnson was eligible for Z Code status as he requested, (Id.), and a determination was made based on the appropriate procedures. (Doc 32-9, at 14-15). Moreover, although Johnson's grievances indicate he desired a single cell because his mental illness caused him to fear other inmates, there is no evidence that staff were aware of any actual excessive risk to Johnson's safety by him being double celled. Thus, Johnson has failed to identify any evidence showing the defendants were deliberately indifferent to his health or other needs in violation of the Eighth Amendment and his Eighth Amendment claims fail as a matter of law.

**D. Johnson's ADA Claims Fail As a Matter of Law**

Johnson's claims under the ADA also fail on the merits. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such

disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. As prisons fall within the definition of "public entity," prisoners may bring claims against their jailors for disability discrimination under Title II of the ADA. Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 209–210 (1998); see also 42 U.S.C. § 12313(1). "[T]he phrase 'service, program, or activity' under Title II … is 'extremely broad in scope and includes anything a public entity does.'" Furgess v. Pa. Dept. of Corr., 933 F.3d 285, 289 (3d Cir. 2019) (quoting Disability Rights N.J., Inc. v. Comm'r, N.J. Dep't of Human Servs., 796 F.3d 293, 301 (3d Cir. 2015)). As such, "a prison's refusal to accommodate inmates' disabilities in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constitutes a denial of the benefits of a prison's services, programs, or activities under Title II" of the ADA. Id. at 290. To state a cognizable claim under Title II of the ADA, a plaintiff must show: "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." Mutschler v. SCI Albion CHCA Health Care, 445 F. App'x 617, 621 (3d Cir. 2011).

Here, the defendants concede that Johnson suffers from the disability of paranoid schizophrenia, but argue that the plaintiff has not shown that the failure to

accommodate his mental disability precluded him from participating in a service, program, or activity, because a single cell is not a "program" within the DOC. This Court and others have consistently held similarly, that the provision of a single cell does not implicate a program or activity contemplated by the ADA. On this score:

> [The plaintiff's] only criticism is that he was not given the medical accommodation he requested—a single cell, which does not implicate a service, program, or activity contemplated by the ADA. See Iseley, 200 Fed. Appx. at 142 (finding that plaintiff had not claimed that he was excluded from any program on the basis of his disability but rather alleged "that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions"), citing Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("[I]ncarceration, which requires the provision of a place to sleep, is not a 'program' or 'activity.' Sleeping in one's cell is not a 'program' or 'activity' "); Riley v. Grainey, 2015 WL 5693805, at *3 (M.D. Pa. Sept. 24, 2015) (finding that inmate failed to adequately plead that he was denied the benefit of a specific prison service, program, or activity as a result of defendant's failure to accommodate him with a single cell); Thomas v. Pa. Dep't of Corr., 615 F.Supp.2d 411, 429 (W.D. Pa. 2009) (holding that plaintiff's requests for a handicap cell that were denied based on a medical determination that they were not warranted did not support discriminatory treatment in violation of Title II of the ADA); Redding v. Hanlon, 2008 WL 762078, at *16 (D. Minn. Mar. 19, 2008) (dismissing inmate's ADA claim where the plaintiff alleged that the defendants had denied him the single cell accommodation ordered by his doctor, not that he had been denied access to any service or program).

Mattis v. Dep't of Corr., No. CV 16-306, 2017 WL 6406884, at *16 (W.D. Pa. Dec. 15, 2017). Further, as the defendants point out, Johnson has not demonstrated that the reason he was denied Z Code was due to his paranoid schizophrenia. Thus, the plaintiff's exclusion from Z Code was not "by reason of his disability," but rather

based upon the evaluation of his unit team based upon the criteria for Z Code. (Doc. 32-9, at 14-15; Doc. 32-10, at 10). Since the undisputed factual record demonstrates that Johnson was not denied access to any service or program by reason of his disability, his claim under the ADA fails as a matter of law.

Moreover, even if Johnson were able to establish a claim under the ADA, his Title II ADA claim against the defendants in their "individual capacities" fails as a matter of law. Although the United States Court of Appeals for the Third Circuit has not addressed the issue precedentially, it has indicated in several non-precedential decisions that Title II of the ADA does not recognize claims for monetary damages against government officers in their individual capacities. See Kokinda v. Pa. Dep't of Corr., 779 F. App'x. 938, 942 (3d Cir.  2019) (per curiam) (holding that plaintiff's "claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability"); Bowens v. Wetzel, 674 F. App'x 133, 136 (3d Cir. 2017) (noting that "the District Court could have properly followed the holdings of [other] circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim"); Matthews v. Pa. Dep't of Corr., 613 F. App'x 163, 169-70 (3d Cir. 2015) (agreeing with the Second and Eighth Circuits that "Title II of the ADA does not provide for suits against state officers in their individual capacities").

Accordingly, neither Garman nor Clark are subject to individual liability under Title II of the ADA.

### E.  <u>The Defendants Are Entitled to Qualified Immunity.</u>

In any event, even if we determined that Johnson had stated colorable legal claims, we believe that the defendants would still be entitled to qualified immunity from damages. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." <u>Reichle v. Howards</u>, 566 U.S. 658, 664 (2012). A qualified immunity analysis involves two questions: whether the official violated a statutory or constitutional right, and whether that right was clearly established at the time of the challenged conduct. <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 735 (2011). Lower courts have the discretion to decide which question to analyze first. <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009). The Supreme Court has cautioned courts to "think carefully before expending scarce judicial resources to resolve difficult and novel questions of constitutional or statutory interpretation that will have no effect on the outcome of the case." <u>Id.</u> (internal quotations omitted); <u>see also</u> <u>al-Kidd</u>, 563 U.S. at 735.

An official's conduct violates clearly established law when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that

right.'" al-Kidd, 563 U.S. at 741 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The Supreme Court has stated that this standard does not require a case directly on point, but requires that "existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 563 U.S. at 741. "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." Id. at 743 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)); see also Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015).

The dispositive question that the court must ask is "whether the violative nature of *particular* conduct is clearly established." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting al-Kidd, 563 U.S. at 742). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id.; see also Davenport v. Borough of Homestead, 870 F.3d 273, 281 (3d Cir. 2017). This "clearly established" standard ensures that an official can reasonably anticipate when his or her conduct may give rise to liability, and "protects the balance between vindication of constitutional rights and government officials' effective performance of their duties." Reichle, 566 U.S. at 664.

In the instant case, based on our analysis of Johnson's Eighth Amendment claim, we conclude that the defendants are entitled to qualified immunity. Given the fact that it has been held that "the denial of Z-code status, by itself, is not cruel and unusual punishment and does not rise to the level of an Eighth Amendment

26

violation,"[4] it cannot be said that Johnson's constitutional right to this particular form of housing accommodation was clearly established. Likewise, the rising tide of case law rejecting the notion that a single cell assignment is a "program" within the meaning of the ADA,[5] amply illustrates that Johnson's ADA claims do not transgress clearly established law. Simply put, given existing case law which rejected legal claims such as those made here by Johnson, the defendants could not have recognized that their actions would violate "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Therefore the defendants are entitled to qualified immunity from damages and this complaint should be dismissed.

## IV.    Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion for summary judgment, (Doc. 30), be GRANTED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

---

[4] Matthis v. Dep't of Corr., No. 16-0306, 2017 WL 6406884, at *12 (W.D. Pa. Dec. 15, 2017) (citing Gellock v. Prison Health Servs., Inc., No. 07-08, 2009 WL 2038235, at *8 (W.D. Pa. July 8, 2009)); see also Thomaston v. Meyer, 519 F. App'x 118 (3d Cir. 2013) (holding denial of Z Code request is not a deprivation of a protected liberty interest).

[5] Mattis v. Dep't of Corr., No. CV 16-306, 2017 WL 6406884, at *16 (W.D. Pa. Dec. 15, 2017)(collecting cases).

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 29th day of March 2022.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge